# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS MONTENEGRO, | Case No. 1:18-cv-01647-DAD-EPG-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| DEBBIE ASUNCION, | |
| Respondent. | |

Petitioner Luis Montenegro is a state prisoner, represented by counsel, proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the petition, Petitioner asserts that he was denied his Sixth and Fourteenth Amendment rights when the trial court admitted testimonial hearsay by the gang expert. For the reasons discussed herein, the undersigned recommends denial of the petition for writ of habeas corpus.

## I.

## BACKGROUND

On November 26, 2014, Petitioner was convicted by a jury in the Kern County Superior Court of attempted possession of a controlled substance (lesser-included offense of count 1), participation in a street gang (count 3), possession of methamphetamine for sale (count 4), and resisting arrest (count 10). The jury found true the special allegation that count 4 was committed at the direction of, for the benefit of, or in association with a criminal street gang. (2 CT[1] 542–

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on April 4, 2019. (ECF No. 15).

50). On February 29, 2015, Petitioner was sentenced to an aggregate imprisonment term of twenty-three years. (3 CT 666). On June 27, 2017, the California Court of Appeal, Fifth Appellate District affirmed the judgment. People v. Montenegro, No. F070781, 2017 WL 2778471 (Cal. Ct. App. June 27, 2017). On August 30, 2017, the California Supreme Court denied the petition for review. (LDs[2] 21, 22).

On November 28, 2018, Petitioner commenced the instant proceedings by filing a federal habeas petition. (ECF No. 1). Respondent filed an answer, and Petitioner filed a traverse. (ECF Nos. 14, 22).

## II.

## STATEMENT OF FACTS[3]

***The Prosecution Case***

Count 1

The prosecution evidence established that on February 1, 2014, at approximately 7:00 p.m., Bakersfield Police Officer Lerry Esparza saw a Toyota 4Runner driven by Jose Antonio Toy, with Montenegro as a passenger, cut off another vehicle as it drove out of a parking lot. Esparza radioed Officer Chad Garrett, who then pulled in behind the Toyota and activated his emergency lights to effect a traffic stop. As the Toyota made an abrupt, sharp turn, Garrett saw Montenegro throw a plastic bag out the window. After traveling approximately 100 feet, the Toyota began slowing down.

During an ensuing traffic stop, Officers Esparza, Frank McIntyre, and Andrew Ferguson searched the Toyota and found several small Ziploc baggies that are commonly used to package narcotics. Esparza searched Toy and found a cellular phone with text messages that appeared to relate to drug dealing. He also searched Montenegro and found $350 in currency in small denominations. McIntyre searched the area along the route the Toyota had traveled prior to stopping. In the front yard of a residence, McIntyre found a clear plastic baggie with two other baggies inside that contained a total of 83.93 grams of methamphetamine.

Counts 3, 4, and 10

On February 20, 2014, in the afternoon, officers from a special drug task force conducted a search of some rooms at the El Morocco Motel in Bakersfield, including the manager's apartment. Fifteen to 20 minutes into the search, a vehicle pulled up to the manager's apartment and a man got out of the vehicle and asked for "Angel." Kern County Sheriff's Deputy Joshua Nicholson, who was in the apartment, replied, "Yeah, come on in." Montenegro walked into the

---

[2] "LD" refers to the documents lodged by Respondent on April 4, 2019. (ECF No. 15).
[3] The Court relies on the California Court of Appeal's June 27, 2017 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

2

apartment, followed by Jose Concepcion Lopez and Jose Velez. Nicholson walked out from behind a wall and said "Kern County Sheriff's Department." Montenegro began reaching for his pocket and backpedaling toward the door. As Nicholson struggled with Montenegro and wrestled him to the ground, Montenegro discarded a plastic baggie containing 4.82 grams of methamphetamine. Lopez and Velez fled but were soon arrested.

Shafter Police Officer Joseph Hayes testified that after arresting Montenegro, he asked him if he was a gang member. Montenegro replied he was a Sureño.

Daniel Garduno's Testimony

Daniel Garduno testified under a grant of use immunity that he became a member of the Varrio Bakers gang in 1994 when he was 13 years old. He was also an associate of the Mexican Mafia when he was in prison. Garduno left the gang in 2008 because, after he developed cancer that year, the gang did not assist him financially.

Garduno testified that a gang member could participate in a variety of activities for the gang, including robbery, burglary, or the sales of drugs or firearms. Garduno began committing thefts and burglaries for the gang, moved on to robberies, and then sold drugs. Gang members would give the proceeds from drug sales to Isaac Martinez, the leader of Varrio Bakers at the time. Martinez would then give some money back to the gang member who sold the drugs, and distribute some to other gang members to "keep the drugs going," as well as to the Mexican Mafia in prison.

Garduno also testified that to get Varrio Bakers gang tattoos, a gang member had to earn them, which required the member to do something for the gang that was witnessed by other "people." Garduno had tattoos of a "V" and "B" on his face that he earned in prison by stabbing another inmate three times, an assignment for which he volunteered.

Garduno knew Montenegro because they knew the same people; Garduno was friends with Montenegro's relatives and he would see Montenegro on the street from time to time. When Garduno last saw Montenegro in 2012, he believed Montenegro still had "juice" with the Varrio Bakers gang, i.e., influence within the gang.

Officer Shaff's Background Gang Testimony

Bakersfield Police Officer Shane Shaff testified as a gang expert that the letters "VB" stood for Varrio Bakers and the letters "VBTVS" stood for Varrio Bakers Traviesos, that they were the most common symbols for the Varrio Bakers gang, and that the gang's major rivals were the Okie Bakers and the Colonia Bakers criminal street gangs. Shaff further testified that Varrio Bakers has three or more members, that gang members are expected to "work" for the gang committing crimes, and that the gang's primary activities were weapons possession, assaults, stabbings, kidnapping, intimidating witnesses, auto theft, narcotics sales, assaults with a deadly weapon, and homicides. According to Shaff, Varrio Bakers fell under the umbrella of the Sureños or Southerners, and the gang aligned itself with the Mexican Mafia, which is a prison gang that controls the Southern Hispanic gangs. The Mexican Mafia also set the rules for Sureño gang members in prison, including prison "hits" and narcotics sales. Gang members from different Southern Hispanic gangs will become associates of the Mexican Mafia while in

prison, and they will be the go-between with the Southern Hispanic street gangs, collecting taxes and money for narcotics sales, and setting the rules on the street. While in prison, Southern Hispanic gangs like the Okie Bakers and Colonia Bakers will get along with Varrio Bakers, but outside of prison there may be rivalries. Shaff also testified that Norteños are the primary rivals of Sureños.

Shaff testified regarding several predicate offenses, including one that occurred on August 7, 2007. On that date, Shaff and another officer conducted a traffic stop of Andrew Perez, who admitted being a member of the Varrio Bakers gang. During a search of Perez, the officers found a loaded firearm and a usable amount of methamphetamine. Perez was subsequently convicted of possession of narcotics while armed and a gang enhancement. Based on his review of the predicate offenses, Shaff opined that the Varrio Bakers gang and the Sureño gang were street gangs that engaged in an ongoing pattern of criminal activity.

Shaff also testified that the possession for sale offense that occurred on February 20, 2014, benefited the Varrio Bakers and Sureños gangs because monies from the sales of narcotics benefit the gang by allowing the gang to purchase "regular items" as well as firearms, vehicles, and other items of that nature. The money also benefitted the gang by being distributed to gang members, including members in custody and members who wielded more influence in the gang.

The Testimony of Officers Who Contacted Montenegro

Bakersfield Police Officer Jeff Martin testified that on January 23, 2010, during a consensual encounter with Montenegro at the Western Nights Motel, he asked Montenegro if he was still an active member of the Varrio Bakers gang. Montenegro responded that he was.

Bakersfield Police Sergeant Brent Stratton testified that on February 16, 2010, he contacted Montenegro at the Night's Rest Motel. When Stratton asked Montenegro about his gang activities, Montenegro stated he was still a member of the Varrio Bakers gang.

Bakersfield Police Sergeant Ryan Kroeker testified that in April 2010, he contacted Montenegro in front of a residence. Montenegro was wearing a hat that had the letter "V" on it. Montenegro also had the letter "V" tattooed on one shoulder and the letter "B" tattooed on the other. Montenegro admitted to Kroeker that the "V" on the hat and the tattooed letters stood for Varrio Bakers and that he was a member of that gang.

Officer Shaff's Testimony Regarding Montenegro

Officer Shaff testified regarding Montenegro's gang membership based on his review of a gang registration form, a combined total of 17 police reports and field interviews, and information on a booking form that was elicited during cross-examination. Shaff, however, was involved in only the following incidents that were documented in police reports. On April 28, 2010, Montenegro, his uncle, James Roybal, and Sam Mohammed were arrested on weapons and gang charges following a pursuit. Shaff interviewed Roybal and Montenegro. Roybal told Shaff that he was no longer an active member of the Varrio Bakers gang but that he was still a Sureño when incarcerated. He also stated that Montenegro was a member of the Varrio Bakers gang. Roybal was wearing a baseball cap with the letter "V" written on it. Montenegro told Shaff he grew up in the Varrio Bakers gang and that his moniker was "Playboy," but that he was no longer active in the gang.

Nevertheless, he admitted that his tattoos of the letters "V" and "B" stood for Varrio Bakers and that he was still in "the mix" and still "hung out." . . . Montenegro also stated that Mohammed was not a member of Varrio Bakers and that Montenegro would know if someone was in the gang.

On May 19, 2010, Shaff and another officer contacted Montenegro, Andrew Bustamante and Antonio Hernandez. All three men were arrested for narcotics sales, and Montenegro and another man were arrested on gang charges. Bustamante told Shaff he was a member of the Southside Bakers criminal street gang, that his moniker was "Joker," and that his subset of the gang was Southgate. Montenegro told Shaff he was a nonactive member of Varrio Bakers but still hung out with other gang members.

During cross-examination, Shaff testified regarding the contents of a booking form that was filled out on February 20, 2014, while Montenegro was being booked into jail. In response to questions on the form, Montenegro stated that he belonged to or associated with the "Bakers" gang and that he should be kept away from North[erners].

Shaff also testified from personal knowledge that Montenegro had the following tattoos: a "V" on his right shoulder, a "B" on his left shoulder, "SUR" on the fingers of his right hand, "XIII" on the fingers of his left hand, and "Varrio BKS" and "Kern County" on the back of his head.

Additionally, the prosecution, without objection, introduced a certified gang registration form from January 2014, for Montenegro. Shaff testified that the form contained Montenegro's name and his monikers, "Louie" or "Playboy," handwritten on it. It also had "Varrio Bakers" handwritten under the word "gang."[4]

Based on his review of the offense reports, the street checks, his contacts with Montenegro, the gang registration form, and Officer Hayes's contact with Montenegro on February 20, 2014, Shaff opined that Montenegro was an active participant in the Varrio Bakers criminal street gang on February 1 through 20, 2014.

<u>Officer Shaff's Testimony Regarding Jose Lopez</u>

Officer Shaff testified he knew Lopez was a Varrio Bakers gang member from having done a workup on him, testifying as a gang expert against him, viewing his gang tattoos, contacts with Lopez, and being on the street when Lopez admitted being a member of the gang. Shaff also testified that based on his involvement in an incident that occurred on May 1, 2010, Lopez was convicted of convicted of [*sic*] possession for sale of methamphetamine and active participation in a gang and ordered to register as gang members.

Shaff reviewed a total of 17 police reports and field interviews involving Lopez and testified to seven of these contacts, including one on August 6, 2007, in which he was personally involved. On that date, Shaff contacted Lopez while he was

---

[4] Adriana Barba testified that she worked for the Bakersfield Police Department as a registration coordinator and that she assisted Montenegro in filling out the gang registration form. After asking Montenegro what gang he had been affiliated with, she wrote "Varrio Bakers" on Montenegro's gang registration form, under the word, "gang." Barba went over the form with Montenegro, confirming the information was correct, and he signed it next to the date.

with George Mendoza, a parolee whose parole terms included a no gang contact clause. Lopez provided a false name, but once Shaff determined his real name, Lopez admitted having been an active member of the Varrio Bakers gang since he was "jumped" into the gang at age 15. Lopez had tattoos of the letters "VB," which he said stood for Varrio Bakers, and the letters "KC," which he said stood for Kern County. The tattoos were "scarred over" because they had been recently redone while Lopez was in prison.

Based on his review of the police reports, the contact noted above, Lopez's contacts and commission of offenses with other gang members, and his involvement in the February 20, 2014, incident, Shaff opined that Lopez was an active participant in the Varrio Bakers Criminal street gang on that date.

***The Defense***

Montenegro testified that he had not gotten any tattoos in 17 years. He first considered himself a Varrio Bakers gang member when he was 13 years old. As a Varrio Bakers gang member, he was also a Sureño gang member, because the Sureño gang is an umbrella gang and if you are a Varrio Bakers gang member, you are also a Sureño gang member. When Montenegro was 18 or 19 years old, he began using drugs and eventually he began drifting away from the gang. His addiction got worse in 2006 when his mother died. Although he could not give a specific date when he was no longer an active gang member, 2007 was the year he got out of the gang.

According to Montenegro, the Varrio Bakers gang did not expect its members to make money for the gang and he never sold drugs for the gang.

Montenegro testified that during the February 1, 2014, traffic stop, Toy threw the drugs out of the car. He also testified [*sic*] that the methamphetamine he discarded on February 20, 2014, was for his personal use.

Montenegro, 2017 WL 2778471, at *1–5 (footnote in original).

## III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged convictions arise out of the Kern County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

enactment. <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); <u>Davis v. Ayala</u>, 576 U.S. 257, 135 S. Ct. 2187, 2198 (2015); <u>Harrington v. Richter</u>, 562 U.S. 86, 97–98 (2011); <u>Williams</u>, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards" apply. <u>Ayala</u>, 135 S. Ct. at 2198. However, if the state court did not reach the merits of the claim, the claim is reviewed *de novo*. <u>Cone v. Bell</u>, 556 U.S. 449, 472 (2009).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Williams</u>, 529 U.S. at 412. In addition, the Supreme Court decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. <u>Moses v. Payne</u>, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting <u>Wright v. Van Patten</u>, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state

1  court decides a case differently than [the Supreme Court] has on a set of materially

2  indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an

3  unreasonable application of[] clearly established Federal law" if "there is no possibility

4  fairminded jurists could disagree that the state court's decision conflicts with [the Supreme

5  Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state

6  court's ruling on the claim being presented in federal court was so lacking in justification that

7  there was an error well understood and comprehended in existing law beyond any possibility for

8  fairminded disagreement." Id. at 103.

9       If the Court determines that the state court decision was "contrary to, or involved an

10  unreasonable application of, clearly established Federal law," and the error is not structural,

11  habeas relief is nonetheless unavailable unless it is established that the error "had substantial and

12  injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)

13  (internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776

14  (1946)).

15       AEDPA requires considerable deference to the state courts. Generally, federal courts

16  "look through" unexplained decisions and review "the last related state-court decision that does

17  provide a relevant rationale," employing a rebuttable presumption "that the unexplained decision

18  adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). This presumption

19  may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on

20  different grounds than the lower state court's decision, such as alternative grounds for affirmance

21  that were briefed or argued to the state supreme court or obvious in the record it reviewed." Id.

22       "When a federal claim has been presented to a state court[,] the state court has denied

23  relief," and there is no reasoned lower-court opinion to look through to, "it may be presumed that

24  the state court adjudicated the claim on the merits in the absence of any indication or state-law

25  procedural principles to the contrary." Richter, 562 U.S. at 99. Where the state court reaches a

26  decision on the merits and there is no reasoned lower-court opinion, a federal court

27  independently reviews the record to determine whether habeas corpus relief is available under

28  § 2254(d). Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the

1  record is not *de novo* review of the constitutional issue, but rather, the only method by which we

2  can determine whether a silent state court decision is objectively unreasonable." Himes v.

3  Thompson, 336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court

4  record and "must determine what arguments or theories . . . could have supported, the state

5  court's decision; and then it must ask whether it is possible fairminded jurists could disagree that

6  those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme]

7  Court." Richter, 562 U.S. at 102.

8  **IV.**

9  **DISCUSSION**

10       Petitioner asserts that he was denied his Fourteenth Amendment right to due process and

11  his Sixth Amendment right to confrontation when the trial court admitted testimonial hearsay by

12  the gang expert. (ECF No. 1 at 9, 12–14).[5] Respondent argues that the state court reasonably

13  rejected Petitioner's claim and a fairminded jurist could agree with the state court's finding that

14  any error in admitting the expert's testimony was harmless. (ECF No. 14 at 14–20).

15       This claim was raised on direct appeal to the California Court of Appeal, Fifth Appellate

16  District, which denied the claim in a reasoned decision. The claim was also raised in the petition

17  for review, which the California Supreme Court summarily denied. (LDs 21, 22). As federal

18  courts "look through" summary denials and review "the last related state-court decision that does

19  provide a relevant rationale," Wilson, 138 S. Ct. at 1192, this Court will examine the decision of

20  the California Court of Appeal, Fifth Appellate District.

21       In denying the claim, the California Court of Appeal stated:

22       ***Introduction***

23  Montenegro relies on *Sanchez* to contend Shaff's testimony regarding the
information contained in the police reports, the field interviews, Montenegro's

24  gang registration form, and Montenegro's booking interview was inadmissible
testimonial hearsay. He further contends Shaff relied, in large part, on this hearsay

25  to conclude Montenegro was an active member of the Varrio Bakers gang and
that he committed the possession for sale offense for the benefit of that gang.

26  Thus, according to Montenegro, the court prejudicially erred when it allowed the
prosecutor to prove the gang offense and gang enhancement with testimonial

27

28      [5] Page numbers refer to the ECF page numbers stamped at the top of the page.

hearsay that was introduced through Shaff's testimony. Respondent contends Montenegro forfeited this contention by his failure to object and that, in any case, the introduction of testimonial hearsay did not prejudice Montenegro.

In the interest of judicial economy, we will forgo any discussion of forfeiture or ineffective assistance of counsel (which Montenegro alleges in the alternative), and dispose of Montenegro's claim based on the absence of prejudice.

### *Legal Principles*

As used in section 186.22, a "criminal street gang" refers to "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated [in subdivision (e) of the statute], having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." (§ 186.22, subd. (f).) The crimes listed in section 186.22, subdivision (e) include the commission or attempted commission of the "sale, possession for sale, transportation, manufacture, offer for sale, or offer to manufacture controlled substances." (§ 186.22, subd. (e)(4); *People v. Loeun* (1997) 17 Cal.4th 1, 8.) To establish the requisite "pattern of criminal gang activity," a prosecutor may "rely on evidence of the defendant's commission of the charged offense and the contemporaneous commission of a second predicate offense by a fellow gang member." (*People v. Loeun, supra*, at p. 10.) The commission of two acts violating the same penal provision (e.g., two murders) will satisfy the statutory requirement of "two or more" predicate offenses if the crimes are shown to have been committed by two or more persons. (*Id.* at fn. 4.)

Section 186.22 proscribes the substantive offense of active participation in a criminal street gang, as set forth in subdivision (a) (hereafter section 186.22(a) ), and also includes enhancement provisions, which are found in subdivision (b) (hereafter section 186.22(b) ). (*People v. Elizalde* (2015) 61 Cal.4th 523, 538–539 (*Elizalde*).) "The elements of the gang participation offense in section 186.22(a) are: First, active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; second, knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and third, the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang." (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1130 (*Rodriguez*).) Active participation can be proven by evidence of gang tattoos, self-admission of gang membership, contacts with a criminal street gang and/or its members, gang-related contacts with police, the display of gang colors, and being in the company of a known gang member while committing a charged offense. (*People v. Castenada* (2000) 23 Cal.4th 743, 752– 753; *People v. Williams* (2009) 170 Cal.App.4th 587, 626; *People v. Garcia* (2007) 153 Cal.App.4th 1499, 1511 (*Garcia*).) A defendant's knowledge that the gang's members engage in a pattern of criminal activity is often inferable from the same evidence that shows his or her active participation in the gang. (*People v. Carr* (2010) 190 Cal.App.4th 475, 489 & fn. 14.)

The enhancement provisions of section 186.22(b) apply when an offense is committed "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22(b).) "Unlike the substantive offense, the enhancement does not require proof of participation in a gang. It is further distinguished from the substantive offense by applying only to gang-

related offenses and by requiring the defendant to act with the *specific intent* to promote, further, or assist any criminal conduct by gang members." (*Rodriguez*, *supra*, 55 Cal.4th at p. 1130, fn. 5.) Although gang membership is not an element of the substantive offense or the enhancement, proof that a defendant belonged to a particular gang goes a long way toward establishing that a crime was committed with a gang-related intent. (See *Sanchez*, *supra*, 63 Cal.4th at pp. 698–699 [discussing the mens rea element of the enhancement]; *Rodriguez*, *supra*, 55 Cal.4th at p. 1130 ["A person who is not a member of a gang, but who actively participates in the gang, can be guilty of violating section 186.22(a)."].)

"In cases where a gang enhancement is alleged or a substantive gang crime is charged, expert testimony regarding the 'culture, habits, and psychology of gangs' is generally permissible because these subjects are ' "sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." ' " (*Garcia*, *supra*, 153 Cal.App.4th at p. 1512; accord, *People v. Vang* (2011) 52 Cal.4th 1038, 1049–1050 & fn. 5.) The issue raised by Montenegro is the extent to which a gang expert may recite and rely upon testimonial hearsay when presenting his or her opinions to a jury. More specifically, Montenegro disputes the admissibility of Shaff's testimony that was derived from police reports and other testimonial hearsay sources.

"Hearsay is an out-of-court statement that is offered for the truth of the matter asserted, and is generally inadmissible." (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1108.) The right of confrontation, as guaranteed by the Sixth Amendment to the federal Constitution and made applicable to the states through the Fourteenth Amendment, ensures the opportunity for cross-examination of adverse witnesses. (*People v. Fletcher* (1996) 13 Cal.4th 451, 455.) In *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*), the United States Supreme Court held that the confrontation clause bars the admission of out-of-court testimonial hearsay statements unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. (*Id.* at pp. 68–69.)

Until the court's opinion in *Sanchez*, expert witnesses could testify about out-of-court statements upon which they had relied in forming their opinions, even if the statements were otherwise inadmissible under the hearsay rule. Case law held that such evidence was not offered for its truth, but only to identify the foundational basis for the expert's testimony. (E.g., *Gardeley*, *supra*, 14 Cal.4th at pp. 618–620; *People v. Miller* (2014) 231 Cal.App.4th 1301, 1310.) Pursuant to this rationale, appellate courts deemed the use of out-of-court statements within an expert's "basis" testimony to be compliant with the requirements of *Crawford*. (*People v. Valadez* (2013) 220 Cal.App.4th 16, 30.)

In *Sanchez*, the California Supreme Court held that a trier of fact must necessarily consider expert basis testimony for its truth in order to evaluate the expert's opinion, which in turn implicates the Sixth Amendment right of confrontation. (*Sanchez*, *supra*, 63 Cal.4th at p. 684.) "When any expert relates to the jury case-specific out-of-court statements, and treats the content of those statements as true and accurate to support the expert's opinion, the statements are hearsay.... If the case is one in which a prosecution expert seeks to relate *testimonial* hearsay, there is a confrontation clause violation unless (1) there is a showing of unavailability and (2) the defendant had a prior opportunity for cross-examination, or forfeited that right by wrongdoing." (*Id.* at p. 686, fn. omitted.)

"The hearsay rule has traditionally not barred an expert's testimony regarding his general knowledge in his field of expertise." (*Sanchez*, *supra*, 63 Cal.4th at p.

676.) The admissibility of an expert's basis testimony now depends on whether it includes "case-specific facts," meaning "those relating to the particular events and participants alleged to have been involved in the case being tried." (*Ibid.*) If it does, the next question is whether such facts are presented in the form of testimonial hearsay. (*Id.* at pp. 680–681, 685.) "Testimonial statements are those made primarily to memorialize facts relating to past criminal activity, which could be used like trial testimony." (*Id.* at p. 689.) Information contained in a police report is generally viewed as testimonial hearsay because police reports "relate hearsay information gathered during an official investigation of a completed crime." (*Id.* at p. 694.)

The *Sanchez* case involved a lone defendant who was arrested for possession of heroin, methamphetamine, and a loaded firearm. (*Sanchez, supra,* 63 Cal.4th at p. 671.) He was convicted by a jury on charges that included active participation in a criminal street gang under section 186.22(a), and was found to have committed his crimes for the benefit of a gang within the meaning of section 186.22(b). (*Sanchez,* at pp. 672–673.) The Fourth District reversed his conviction on the substantive gang offense in light of *Rodriguez, supra,* 55 Cal.4th at page 1134, which holds that active participation in a criminal street gang requires the commission of an underlying felony with at least one other gang member. (*Sanchez,* at p. 673, fn. 5.) The California Supreme Court granted review of the defendant's *Crawford* claim, which had been rejected by the appellate court. (*Sanchez,* at p. 670.) The high court found prejudice in the admission of hearsay testimony by the prosecution's gang expert that was based on the contents of police reports and other hearsay sources. (*Id.* at p. 695.) The hearsay, which was outside of the expert's personal knowledge and *not corroborated by any admissible evidence*, was essentially the only proof of the defendant's membership in a particular gang and contained allegations of his involvement in prior incidents that tended to show he was dealing drugs for the benefit of his gang. (*Id.* at pp. 672–673.) *Excluding the hearsay, the only evidence to support the section 186.22(b) enhancement was the defendant's arrest at a location within "gang territory."* (*Sanchez,* at p. 699, italics added.) The gang findings were reversed on the basis of *Crawford* error, but the judgment was affirmed as to the remaining convictions. (*Sanchez,* at p. 700.).

*Analysis*

Based on *Sanchez*, it is clear the court erred in allowing Shaff to testify regarding case-specific facts, e.g., those tending to show Montenegro and Lopez were members of the Varrio Bakers gang, which were contained in numerous police reports, because they related testimonial hearsay. Assuming the court also erred in allowing the officer to testify regarding the contents of field identification cards, the gang registration form, and Montenegro's booking interview, because the information derived from these sources was also testimonial hearsay, we will conclude these errors were harmless.[6]

"Confrontation clause violations are subject to federal harmless-error analysis under *Chapman v. California* (1967) 386 U.S. 18, 24. [Citation.] 'Since

---

[6] In *Elizalde,* the Supreme Court held that a defendant's answers during the booking process to gang affiliation questions are inadmissible if the defendant was not advised of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436, 478–479 (*Miranda*). (*Elizalde, supra,* 61 Cal.4th at p. 527.) The record is unclear whether Montenegro was advised of his *Miranda* rights before he answered the booking questions noted above. However, assuming he was not advised of his *Miranda* rights before giving the answers noted above, we find the error harmless because, as discussed *infra*, Montenegro's gang affiliation was amply established by independent admissible evidence.

*Chapman*, we have repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.' [Citation.] The harmless error inquiry asks: 'Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?' " (*People v. Geier* (2007) 41 Cal.4th 555, 608.)

In *Sanchez*, the court stated that "only when a prosecution expert relies upon, and relates as true, a *testimonial* statement would the fact asserted as true have to be independently proven to satisfy the Sixth Amendment." (*Sanchez, supra*, 63 Cal.4th at p. 685.) The court also stated that an expert may rely upon hearsay in forming an expert opinion, but cannot "relate as true case-specific facts asserted in hearsay statements, *unless they are independently proven by competent evidence* or are covered by a hearsay exception." (*Id.* at pp. 685–686, italics added.)

Montenegro raises a confrontation clause claim only against the case-specific facts of Montenegro's and Lopez's membership in the Varrio Bakers criminal street gang which were crucial in proving both the gang participation offense and enhancement. Montenegro's active membership in the Varrio Bakers gang established the first two elements of the gang offense, i.e., his active participation in a criminal street gang and his knowledge that the gang had engaged in a pattern of criminal activity. (*Rodriguez, supra*, 55 Cal.4th at p. 1130.) Lopez's active membership in the Varrio Bakers gang established the third element of this offense, i.e., "willful promotion, furtherance, or assistance in any felonious conduct by members of [the] gang." (*Ibid.*) Their membership in the Varrio Bakers gang was also vital in proving the gang enhancement because it bolstered the conclusion that Montenegro committed the possession for sale offense for the benefit of and or in association with a criminal street gang with "the specific intent to promote, further, or assist any criminal conduct by gang members." (§ 186.22, subd. (b); cf. *Sanchez, supra*, 63 Cal.4th at p. 698.).

In *Sanchez,* the Supreme Court stated that hearsay evidence must be admitted through an applicable hearsay exception. "Alternatively, the evidence can be admitted through an appropriate witness and the expert may assume its truth in a properly worded hypothetical question in the traditional manner." (*Sanchez, supra*, 63 Cal.4th at p. 684.) "Thus, only when a prosecution expert relies upon, and relates as true, a *testimonial* statement would the fact asserted as true have to be independently proven to satisfy the Sixth Amendment." (*Sanchez,* at p. 685.)

Shaff's testimony about case-specific facts that was based on non-testifying officers' contact with Montenegro and Lopez and the gang registration form was testimonial hearsay and, thus, inadmissible. The record, however, contains other properly admitted evidence that supports Shaff's opinion that Montenegro and Lopez were active members of the Varrio Bakers gang on February 20, 2014.

Officer Martin testified that when he contacted Montenegro on January 23, 2010, Montenegro admitted he was a member of the Varrio Bakers gang. Officer Stratton testified that when he contacted Montenegro on February 16, 2010, Montenegro admitted he was still a member of the Varrio Bakers gang. Officer Kroeker testified that in April 2010, during a consensual encounter, Montenegro admitted to him that the "V" on the hat he was wearing and his tattoos of the letters "V" and "B" stood for Varrio Bakers and that he was a member of the gang.

Following Montenegro's April 28, 2010, arrest, Montenegro admitted to Officer Shaff that he grew up in the Varrio Bakers gang, that his tattoos of the letters "V" and "B" stood for Varrio Bakers, and that his gang moniker was "Playboy." Although he claimed he was no longer active in the gang, he admitted he was still in the "mix" and still "hung out." Additionally, when questioned whether another individual was a Varrio Bakers gang member, Montenegro stated that he was not and that Montenegro would know whether someone was in the gang. On May 19, 2010, after being arrested with another gang member and a third man for narcotics sales and gang charges, Montenegro told Shaff that he was a nonactive member of the Varrio Bakers gang, but that he still hung out with gang members. As a result of an incident in November 2010, Montenegro was convicted of assault with a deadly weapon with a gang enhancement.

Moreover, Garduno, a former Varrio Bakers gang member, testified that he was familiar with Montenegro, that he knew him to be a member of the gang, and that in 2012, Montenegro still had influence in the gang. When he was arrested on February 20, 2014, Montenegro was with Lopez, another Varrio Bakers gang member, and Montenegro admitted he was a Sureño gang member. Further, during his testimony, Montenegro admitted that he had been a Varrios Bakers gang member, although he claimed to have dropped out of the gang in 2007.

With respect to Lopez, Officer Shaff testified that during unspecified street contacts he had with Lopez or during which he was present, Lopez admitted being a Varrio Bakers gang member. Shaff also testified that when he contacted Lopez on August 6, 2007, Lopez admitted he was an active member of the Varrio Bakers gang who was jumped into the gang at age 15. Shaff also saw that Lopez had several gang tattoos. Lopez's involvement in an incident that occurred on May 1, 2010, resulted in his conviction for possession of methamphetamine and active participation in a street gang. On February 20, 2014, Lopez accompanied Montenegro while Montenegro possessed for sale a large amount of methamphetamine. Thus, the testimonial hearsay was duplicative of ample independent evidence in the record that supports Shaff's opinion that Montenegro and Lopez were both gang members.

Montenegro contends the error in admitting the police reports and other testimonial evidence that associated Montenegro and Lopez with other gang members was not harmless beyond a reasonable doubt because the "sheer volume of police reports and contacts" likely caused jurors to conclude Montenegro and Lopez were gang members. We disagree. As noted above, the testimonial hearsay was duplicative of properly admitted evidence that in Montenegro's case consisted of several officers's first-hand knowledge of Montenegro's admissions that he was a gang member. Moreover, Montenegro admitted he had been a Varrio Bakers gang member since he was 13 years old and the only dispute as to him was whether he was still a gang member in February 2014 when he committed the underlying offenses. Further, the evidence that Lopez was a gang member was unrebutted. Thus, we conclude that the admission of testimonial hearsay was harmless beyond a reasonable doubt. (Cf. *Sanchez*, *supra*, 63 Cal.4th at p. 699 [admission of testimonial hearsay prejudicial in proving gang enhancement where an officer's recitation of testimonial hearsay was the main evidence of the defendant's intent to benefit a gang].)

<u>Montenegro</u>, 2017 WL 2778471, at *5–9 (footnote in original).

///

1    **A. Confrontation Clause**

2    Applying <u>Chapman v. California</u>, 386 U.S. 18 (1967), the California Court of Appeal

3    found to be harmless the erroneous admission of Officer Shaff's testimony regarding case-

4    specific facts tending to show Petitioner and Jose Lopez were members of the Varrio Bakers

5    contained in numerous police reports, the gang registration form, and Petitioner's booking

6    interview. Petitioner contends that the state court erred in concluding that the erroneous

7    admission was harmless. (ECF No. 1 at 14). Respondent does not contest that a Confrontation

8    Clause violation occurred but argues that the state court reasonably rejected Petitioner's claim

9    and a fairminded jurist could agree with the state court's finding that any error in admitting the

10   expert's testimony was harmless. (ECF No. 14 at 14–20).

11   Confrontation Clause violations are subject to harmless error review. <u>Delaware v. Van</u>

12   <u>Arsdall</u>, 475 U.S. 673, 684 (1986). Under <u>Chapman</u>, "the test for determining whether a

13   constitutional error is harmless . . . is whether it appears 'beyond a reasonable doubt that the

14   error complained of did not contribute to the verdict obtained.'" <u>Neder v. United States</u>, 527 U.S.

15   1, 15 (1999) (quoting <u>Chapman</u>, 386 U.S. at 24). The Supreme Court has held that when a state

16   court's "<u>Chapman</u> decision is reviewed under AEDPA, 'a federal court may not award habeas

17   relief under § 2254 unless *the harmlessness determination itself* was unreasonable.'" <u>Davis v.</u>

18   <u>Ayala</u>, 576 U.S. 257, 135 S. Ct. 2187, 2199 (2015) (quoting <u>Fry v. Pliler</u>, 551 U.S. 112, 119

19   (2007)). That is, Petitioner must show that the state court's harmless error determination "was so

20   lacking in justification that there was an error well understood and comprehended in existing law

21   beyond any possibility of fairminded disagreement." <u>Ayala</u>, 135 S. Ct. at 2199 (internal

22   quotation marks omitted) (quoting <u>Richter</u>, 562 U.S. at 103). <u>See</u> <u>Mitchell v. Esparza</u>, 540 U.S.

23   12, 18 (2003) (per curiam) ("We may not grant [the] habeas petition, however, if the state court

24   simply erred in concluding that the State's errors were harmless; rather, habeas relief is

25   appropriate only if the [state court] applied harmless-error review in an 'objectively

26   unreasonable' manner.").

27   To the extent Petitioner asserts that the admission of the expert's testimony regarding

28   case-specific facts based on non-testifying officers' contact with Petitioner and Lopez was not

1   harmless error,[7] the Court will look to the "[s]everal factors [that] guide the prejudice inquiry in

2   the Confrontation Clause context: 'the importance of the [wrongly admitted] testimony, whether

3   the testimony was cumulative, the presence or absence of evidence corroborating or

4   contradicting the testimony, the extent of cross-examination permitted, and the overall strength

5   of the prosecution's case.'" Mayes v. Premo, 766 F.3d 949, 965 (9th Cir. 2014) (last alteration in

6   original) (quoting Ocampo v. Vail, 649 F.3d 1098, 1114 (9th Cir. 2011)). No single factor is

7   dispositive. Mayes, 766 F.3d at 965.

8          1.   Cumulative and Corroborating Testimony

9          In the instant case, the state court's determination that Officer Shaff's challenged

10  testimony regarding case-specific facts based on non-testifying officers' contact with Petitioner

11  was cumulative of and corroborated by other properly admitted testimony was not objectively

12  unreasonable.

13         Six of the challenged police reports about which Officer Shaff testified concerned

14  incidents in 2001, 2004, 2005, 2006, and 2007. The state court's determination that Shaff's

15  testimony concerning these reports was corroborated by Petitioner's own testimony at trial is

16  supported by the record. Petitioner testified that he considered himself a Varrio Bakers gang

17  member at age thirteen and was a member until around 2007. (7 RT[8] 1419, 1459–60, 1494).

18         The remaining reports concerned incidents in 2008, 2009, 2010, and 2014. The record

19  supports the state court's conclusion that Shaff's testimony concerning these reports was

20  cumulative of and corroborated by the properly admitted testimony of Officers Kroeker, Stratton,

21  Martin, and Shaff regarding their personal contacts with Petitioner in 2010 and 2014. Sergeant

22  Kroeker testified that on April 6, 2010, Petitioner informed Kroeker that the "V" on Petitioner's

23  hat and the "V" and "B" tattoos on his shoulders stood for Varrio Bakers and that Petitioner was

24  a member of the Varrio Bakers. (5 RT 825–26). Sergeant Stratton testified that on February 16,

25  2010, Petitioner informed Stratton that Petitioner was still a member of the Varrio Bakers. (5 RT

26  _____

27  [7] The Court declines to address whether the state court's conclusion that Officer Shaff's testimony regarding case-specific facts based on non-testifying officers' contact with Petitioner and Lopez was inadmissible "involved an unreasonable application of . . . clearly established federal law," 28 U.S.C. § 2254(d), because the state court's harmless error determination was not objectively unreasonable, as set forth in sections IV(A)(1)–(4), infra.

28  [8] "RT" refers to the Reporter's Transcript on Appeal lodged by Respondent on April 4, 2019. (ECF No. 15).

834–35). Officer Martin testified that on January 23, 2010, Petitioner answered in the affirmative when Martin asked if Petitioner was still an active member of the Varrio Bakers. (6 RT 1007–08). Further, Officer Hayes testified that on February 20, 2014, when Hayes asked Petitioner if he is a gang member, Petitioner stated that he is a Sureño. (4 RT 602).

Officer Shaff also properly testified as to his own personal contacts with Petitioner in 2010. (6 RT 1040). On April 28, 2010, Petitioner told Shaff that "he grew up in the Varrio Bakers criminal street gang, but he was no longer active." (6 RT 1045). However, Petitioner admitted to Shaff that "he was still in the mix during that" time, "still hung out," and that "he would know whether somebody else was from the Varrio." (6 RT 1046). On May 19, 2010, Petitioner told Shaff that he was a nonactive member of the Varrio Bakers, but "still hangs out with other gang members." (6 RT 1047).

Additionally, the California Court of Appeal relied on the testimony of former Varrio Bakers gang member Daniel Garduno, which is supported by the record. Garduno testified that he was familiar with Petitioner and that in 2012 Petitioner still had influence within the Varrio Bakers gang. (4 RT 624–25, 632–34).

2.   Extent of Cross-Examination Permitted

Petitioner's defense attorney had the opportunity to cross-examine Officer Shaff extensively. Defense counsel specifically asked Officer Shaff during cross-examination whether "all of the stuff you talked about with respect to these gentlemen and the other gentlemen, those are all -- you brought those all into bolster your opinion; is that correct, or to be the foundation of your opinion?" (6 RT 1163–64). Shaff answered, "I believe it goes into my training and experience to allow me to provide an opinion on the case." (6 RT 1164). Defense counsel also raised Officer Shaff's direct contacts with Petitioner in 2010 in which Petitioner told Shaff that he was getting out of the gang and was no longer active. (6 RT 1065, 1077). Defense counsel also asked specific questions about the booking process and how a former gang member might still want to be housed away from the rival rang. (6 RT 1076). Defense counsel further questioned Shaff about the gang registration form. Shaff agreed that there was nothing on the form saying that Petitioner was currently admitting any kind of gang membership. (6 RT 1079–

80, 1081). Shaff also admitted multiple times that he was not present and thus, had no personal

knowledge regarding the gang registration form. (6 RT 1081).

    3.  <u>Overall Strength of Prosecution's Case</u>

In the traverse, Petitioner contends that "[a]t most, Petitioner was with a known gang

member at the time of the offense." (ECF No. 22 at 8). Petitioner further argues that "even if the

evidence is considered sufficient to show gang membership, the properly admitted evidence does

not show the elements of the gang enhancement." (ECF No. 22 at 9).

> The gang sentencing enhancement under CPC § 186.22(b)(1) may
> be applied only if the prosecution proves beyond a reasonable
> doubt that (1) the defendant committed a felony "for the benefit of,
> at the direction of, or in association with any criminal street gang"
> and (2) the defendant did so "with the specific intent to promote,
> further, or assist in any criminal conduct by gang members." The
> first prong is called the "gang related" requirement. The second is
> called the "specific intent" requirement.

<u>Maquiz v. Hedgpeth</u>, 907 F.3d 1212, 1218 (9th Cir. 2018). "California courts find the elements

of the gang enhancement satisfied when, for example, defendants commit crimes with gang

members, wear gang colors during a crime, victimize rival gang members or others potentially

threatening gang turf, bring objects with potential gang symbols to the crime, and have tattoos

potentially symbolizing the gang." <u>Id.</u> at 1218–19 (citations omitted).

The expert properly testified that "monies made from the sales of the narcotics is going to

benefit the gang itself, and the lifestyle of purchasing of regular items along with . . . other items

as firearms and vehicles and things of that nature. . . . the money . . . goes into members that are

in custody and it goes into the big homies or people with more influence, and the money is

passed around within the gang, so it benefits the gangs and the members themselves." (6 RT

1059). "It is well settled that expert testimony about gang culture and habits is the type of

evidence a jury may rely on to reach a verdict on a gang-related offense or a finding on a gang

allegation. . . . Here, the gang expert's testimony was necessary to explain to the jury how a

gang's reputation can be enhanced through drug sales and how a gang may use the proceeds

from such felonious conduct." <u>People v. Ferraez</u>, 112 Cal. App. 4th 925, 930–31 (Cal. Ct. App.

2003) (internal citation omitted). <u>See</u> <u>People v. Albillar</u>, 51 Cal. 4th 47, 63 (Cal. 2010) ("Expert

opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a [ ] criminal street gang' within the meaning of section 186.22(b)(1).").

As noted above, the challenged testimony was duplicative of the properly admitted testimony of several officers' first-hand knowledge of Petitioner's admissions that he was a gang member. Petitioner was with Jose Lopez when Petitioner committed the offense. The California Court of Appeal found that "the evidence that Lopez was a gang member was unrebutted," Montenegro, 2017 WL 2778471, at *9, and Petitioner has failed to establish that the state court's conclusion that Lopez was a gang member was an unreasonable determination of fact.[9] "[I]f substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." People v. Albillar, 51 Cal. 4th 47, 68 (Cal. 2010). See Maquiz, 907 F.3d at 1221 n.3 (noting that "Albillar holds that specific intent can be inferred if the crime is committed with fellow gang members").

4. Conclusion

The independent evidence of Petitioner's gang membership in 2014 is far from overwhelming, and if this Court were conducting a *de novo* review, it may have come to a different conclusion. Nevertheless, the undersigned finds that habeas relief is not warranted. In accordance with AEDPA, it is not for this Court to "conduct[] our own independent inquiry into whether the state court was correct as a *de novo* matter." Yarborough v. Alvarado, 541 U.S. 652,

---

[9] In the traverse, Petitioner acknowledges that "[a]t most, Petitioner was with a known gang member at the time of the offense." (ECF No. 22 at 8). Two provisions of the AEDPA, 28 U.S.C. § 2254(d)(2) and (e)(1), govern the review of state court determinations of fact. The Court notes there is some confusion in Ninth Circuit cases as to how these provisions interact, and the Supreme Court has not addressed the relationship between § 2254(d)(2) and (e)(1). See Wood v. Allen, 558 U.S. 290, 300 (2010); Murray v. Schriro, 745 F.3d 984, 998–1001 (9th Cir. 2014) (acknowledging the Ninth Circuit's two lines of cases and noting that any tensions between various Ninth Circuit cases or between Ninth Circuit cases and limited statements by the Supreme Court will have to be resolved by the Ninth Circuit en banc or by the Supreme Court). However, the Court "need not address the interaction between § 2254(d)(2) and (e)(1) when the petitioner's claims fail to satisfy either provision." Atwood v. Ryan, 870 F.3d 1033, 1047 (9th Cir. 2017) (citing Murray, 745 F.3d at 1001. See Apelt v. Ryan, 878 F.3d 800, 837 n.23 (9th Cir. 2017) ("Indeed, it is difficult to imagine a case in which a court would find that a state court decision was 'an unreasonable determination of the facts,' but that the petitioner had not rebutted the 'presumption of correctness by clear and convincing evidence.'"), cert. denied, 139 S. Ct. 2716 (2019).

1   665 (2004). It is for this Court to determine whether the California Court of Appeals'

2   harmlessness determination was objectively unreasonable, *i.e.*, that it "was so lacking in

3   justification that there was an error well understood and comprehended in existing law beyond

4   any possibility of fairminded disagreement." Ayala, 135 S. Ct. at 2199 (internal quotation marks

5   omitted) (quoting Richter, 562 U.S. at 103).

6        Here, the facts and law underlying the state court's analysis were correct. The cumulative

7   nature of the challenged testimony, the presence of corroborating evidence, the extent of cross-

8   examination permitted, and the overall strength of the prosecution's case support the state court's

9   conclusion that any Confrontation Clause violation was harmless. Therefore, the state court did

10  not unreasonably conclude that given the strength of the other evidence introduced at trial, the

11  admission of Shaff's testimony regarding case-specific facts tending to show Petitioner and

12  Lopez were members of the Varrio Bakers contained in numerous police reports, the gang

13  registration form, and Petitioner's booking interview (of which Officer Shaff did not have

14  personal knowledge) was merely cumulative of other admissible gang-related evidence and was

15  harmless beyond a reasonable doubt. See Esparza, 540 U.S. at 18 ("We may not grant [the]

16  habeas petition, however, if the state court simply erred in concluding that the State's errors were

17  harmless; rather, habeas relief is appropriate only if the [state court] applied harmless-error

18  review in an 'objectively unreasonable' manner."). Accordingly, Petitioner is not entitled to

19  habeas relief on this ground.

20       **B.  Expert Opinion Testimony**

21       In the traverse, Petitioner argues that "[a]ll the evidence only tended to establish

22  Petitioner's membership and active role in the gang in 2010, not 2014. Thus, it is only reasonable

23  to conclude that the presentation of expert testimony tying Petitioner to the Varrio Baker gang in

24  2014 had a substantial and injurious effect on the jury's verdict." (ECF No. 22 at 8–9).

25       To the extent that Petitioner challenges the expert's opinion that Petitioner was a Varrio

26  Baker gang member in 2014, the Court finds that Petitioner is not entitled to habeas relief. The

27  Ninth Circuit has held that because "there is no clearly established constitutional right to be free

28  of an expert opinion on an ultimate issue . . . the admission of the opinion testimony of [the gang

1  expert] cannot be said to be contrary to, or an unreasonable application of, Supreme Court

2  precedent." Maquiz v. Hedgpeth, 907 F.3d 1212, 1217 (9th Cir. 2018) (internal quotation marks

3  omitted) (quoting Briceno v. Scribner, 555 F.3d 1069, 1077–78 (9th Cir. 2009)). Officer Shaff's

4  opinion testimony that Petitioner was a Varrio Baker gang member in 2014 did not violate

5  Petitioner's right to due process.

6                                                V.

7                                   **RECOMMENDATION**

8          Accordingly, the undersigned HEREBY RECOMMENDS that the petition for writ of

9  habeas corpus be DENIED.

10         This Findings and Recommendation is submitted to the assigned United States District

11  Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local

12  Rules of Practice for the United States District Court, Eastern District of California. Within

13  **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file

14  written objections with the court and serve a copy on all parties. Such a document should be

15  captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the

16  objections shall be served and filed within fourteen (14) days after service of the objections. The

17  assigned United States District Court Judge will then review the Magistrate Judge's ruling

18  pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within

19  the specified time may waive the right to appeal the District Court's order. Wilkerson v.

20  Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th

21  Cir. 1991)).

22  IT IS SO ORDERED.

23     Dated:  __June 29, 2020__            /s/ _Erica P. Grosjean_

24                                          UNITED STATES MAGISTRATE JUDGE

25

26

27

28

21